Albert Litka v. James L. Wilcox and Edward J.
Wilcox.

*Contracts involving personal association are not assignable— Waste.*

K owned certain land and W agreed to work it on shares with him, and stipulated that his wife should cook and wash for K. Becoming tired of the arrangement Mrs. W left, and W afterwards assigned his contract to his father, who notified K that *his* wife was ready to do his work, and entering upon the land, began to cut and remove timber. At about the same time the owner sold the land and his grantee filed a bill to stay waste and obtained relief. The decree was affirmed. The contract was practically rescinded by W's action and no longer bound K; it contemplated personal association, and was therefore not assignable, and the grantee, on obtaining his deed, was justified in proceeding without delay to restrain waste.

Appeal from Barry. Submitted June 12. Decided June 18.

Injunction to restrain waste. Defendants appeal.

*Sweezey & Knappen* for complainant.

*C. G. Holbrook* for defendants.

Graves, J. November first, 1875, one Kruger owned and was in possession of a lot of forty acres in Barry county. He had a house and barn on the place, and about nineteen acres were improved and under cultivation. The rest was wild, and there was much valuable timber. Kruger had no family with him.

At the time mentioned the defendant Edward J., who was a married man, entered into a written agreement with him to remove to the house and among other things carry on the place upon shares. The arrangement was to continue for a year with the privilege of two. The parties were to work together. The wood land was to be cleared off and fenced and railroad ties to be got out and sold, and crops to be put in. Each

party was to provide his own provisions but the wife of Wilcox was to cook and wash for Kruger. It is unnecessary to repeat all the stipulations.

November 3, Wilcox entered with his family pursuant to the agreement and continued for a little over two and a half months or until the 24th of January, at which time Mrs. Wilcox refused to stay any longer and went away with her family. This violation of the agreement is said to have been caused by Kruger, who is alleged in the answer to have been "disagreeable, ugly-tempered and difficult to get along with." No facts are stated however, and the case is bare of evidence to justify the removal.

March 6, 1876, the defendant Edward J. Wilcox assumed to sell and assign his contract with Kruger, to his father, the defendant James L. Wilcox. The latter resided about a mile and a half from Kruger's place, and on receiving the assignment he repaired to Kruger and told him his wife was ready to do his work under the contract whenever he should take it to her.

March 11th, 1876, Kruger sold and conveyed to complainant.

The defendant James, assuming to be entitled under the old contract to do so, proceeded to the premises, and with hands to help him, began to cut and remove all such timber as he chose, and thereupon complainant filed this bill to stay the waste. The court below granted relief, and we think properly.

*First.* Upon the facts as they appear in the record the younger Wilcox may be fairly held to have thrown up the contract and to have justified Kruger in deeming it to have no further obligatory force upon him. A leading motive of Kruger must have been the obtainment of the help of Mrs. Wilcox, and when she left, a main condition was broken. Evidently both parties so understood, and we find nothing satisfactory in the case to show that her husband after that made any real effort to meet the duties he had agreed to render.

*Second.* The agreement between young Wilcox and

Kruger was of a personal nature and contemplated personal association and personal service. It implied that there could be no substitution at the will of one party, and the attempt to assign was for that reason abortive. The elder Wilcox obtained no right whatever; *first*, because the contract had been practically rescinded; and *second*, because it was not assignable.

*Third.* Complainant was not required to wait at all after getting his deed. The evidence shows that spoliation was being rapidly carried on under a claim of right, and he was justified in proceeding without delay to put a stop to it.

We discover no objections to the decree and it must be affirmed with costs.

The other Justices concurred.