WRAY-AUSTIN MACHINERY CO. *v.* FLOWER.

1. LANDLORD AND TENANT—SUBLEASE—RIGHTS OF SUBLESSEE.
   By claiming that his rent was due on the 15th of the month, the date of his sublease, and making his payments on that date, a subtenant negatives his claim that by his sublease he assumed the position of the original lessee under a lease in which the rent was payable on the first of the month.

2. SAME—SURRENDER OF LEASE.
   The surrender of a lease must be the mutual and voluntary action of the parties.

3. SAME—NOTICE TO QUIT—TERMINATION OF TENANCY.
   The tenancy, and the term under a lease, terminate at the expiration of the time limited in a notice to quit for nonpayment of rent.

4. SAME—LANDLORD AND SUBLESSEE—PRIVITY.
   There is no privity between a landlord and a sublessee, and the sublessee is a stranger to summary proceedings by the landlord to obtain restitution of the premises for nonpayment of the rent.

5. SAME—LEASE—COVENANT NOT TO ASSIGN—BREACH.
   Where a lease contains a covenant not to assign, an assignment works a forfeiture of the term.

Appeal from Wayne; Donovan, J. Submitted April 25, 1905. (Docket No. 87.) Decided June 8, 1905.

Bill by the Wray-Austin Machinery Company against Ellen H. Flower and William J. Wray for subrogation to the rights of defendant Wray in a certain lease from defendant Flower. From a decree for complainant, defendant Flower appeals. Reversed, and bill dismissed.

*Haug & Yerkes*, for complainant.

*Charles S. Hampton* (*William D. Fuller*, of counsel), for appellant.

OSTRANDER, J.   The defendant Ellen H. Flower is the owner of premises known as 171, 173, and 175 Woodbridge street west, in Detroit.   The complainant is a Michigan corporation.   The bill of complaint avers that complainant has existed for four years and more, during which period it has occupied for business purposes the lands and premises above described; that it succeeded a firm of the same name, composed of William J. Wray and one David E. Austin; that on September 15, 1897, defendant Wray leased the premises in question of defendant Flower for a term of five years at an annual rental of $600, payable monthly, and that the occupancy of the premises, first by the copartnership and afterwards by the complainant, was known to defendant Flower, the landlord, and that the rent up to August, 1903, had been paid by checks of the Wray-Austin Machinery Company, either the copartnership or the corporation; that the lease in question contained a provision that it should not be assigned without the written consent of the lessor, but contained no clause against subletting; that rent had been paid usually from the 1st to the 15th of each month for the preceding month, and had been accepted without question or protest.   Paragraphs 4 and 5 of the bill are here set out in full:

"4. That said original lease expired on September 15, 1902, and thereupon said Wm. J. Wray, contrary to the express rights of your orator, and unknown to it, procured an extension of said lease from defendant Ellen H. Flower in his own name for a further period of five years; but your orator avers and charges the fact to be that said lease belonged to and was the property of your orator, and said extension so taken by defendant Wm. J. Wray in his own name was in fact the property of your orator, and belonged to it both in law and in equity; and that your orator paid to defendant Ellen H. Flower, without protest on her part, by its own checks, the rent due thereunder until August, 1903.

"5. That on August 15, 1903, defendant Wm. J. Wray sold all his stock in your orator to one H. N. Link, and retired from your orator.   That in the negotiations for said sale the question of said lease from defendant Ellen H.

Flower came up, and defendant Wm. J. Wray stated and admitted that said lease belonged to and was the property of your orator, and that he had no interest therein, and offered to assign the same to your orator, or to make such disposition of the same as should be required by your orator. That thereupon one Charles S. Hampton, attorney for defendant Ellen H. Flower, was consulted, and the proposition to assign said lease by defendant Wm. J. Wray to your orator was made, and the written consent thereto of defendant Ellen H. Flower was asked, and the said defendant Ellen H. Flower refused to consent to the assignment of said lease by defendant Wm. J. Wray to your orator.

"That in view of said circumstances the only thing which could be done at the time by your orator was to take a sublease for said premises from defendant Wm. J. Wray, which was done, and said sublease was on said 15th day of August, 1903, executed by defendant Wm. J. Wray to your orator, and was on said last-mentioned date delivered to your orator, a true copy of which lease is hereto attached, marked 'Exhibit A,' and made a part of this, your orator's bill of complaint."

It is also further averred in the bill of complaint that it was agreed between Wray and complainant that complainant was to continue to send its checks for the rent to become due to defendant Ellen H. Flower as had been done, and that when the next installment of rent became due complainant sent its check as aforesaid, and it was returned, and that thereupon complainant sent its check to defendant Wray, and had so continued to do until the time of filing the bill. Upon information and belief it is averred that defendant Wray did not pay the rent due for the month of December, 1903; that on January 2, 1904, a seven-day notice to quit was served on him; that such proceedings were then had that on January 15, 1904, judgment for restitution of the premises was entered by the circuit court commissioner in favor of defendant Flower and against defendant Wray, the commissioner finding rent to the amount of $50 to be due, and taxing the costs of the proceedings at $3.50; that no notice of these proceedings was had by complainant; that on January 15, 1904,

it mailed its check to defendant Wray for the rent of the previous month, which he cashed on the next day; on that day also complainant learned of the proceedings for restitution of the premises, and thereupon went to the commissioner, offered to pay the amount of rent found due and the costs, whatever the same might be, was told that the two amounted to $53.50, was informed by the commissioner that if that amount was paid no writ of restitution would be issued, and thereupon paid it into court and took a receipt; that defendant Flower refused to accept the sum paid, demanded that a writ of restitution issue, and, the circuit court commissioner declining to issue the writ, petition for mandamus was filed in the circuit court for the county of Wayne to compel the issuance of the writ. An order to show cause was issued, pending the hearing upon which this bill was filed. It is also averred upon information and belief that defendants Flower and Wray connived and conspired together to have the summary proceedings instituted for the purpose of ousting complainant and securing the premises to the defendant Wray, and that the two defendants are conniving and conspiring to harass and annoy complainant and to dispossess it; that they have stated that they intend to and will dispossess complainant. Complainant offers to pay rent for the premises, and to bring the proper sum into court, but avers that defendant Wray is not financially responsible, and that, if it continues to pay rent to him, it is liable to suffer great loss and damage. The claim made in the bill is that complainant is entitled to the lease standing in the name of defendant Wray, and to be subrogated to all his rights thereunder; that Wray is only trustee of complainant; and it is prayed that the court will find complainant to be subrogated to the rights of Wray, if he has any under the lease, to reform the lease by substituting complainant in the place of Wray, for a determination that it is the real owner of the lease, and that an assignment may be ordered to be made to it, and for an injunction.

Both defendants answered. Each denies any connivance or conspiracy to dispossess complainant. The case was heard upon pleadings and proofs, and a decree entered in which it is determined that complainant is the real owner of the lease made by Flower to Wray; that there is due on it rent at the rate of $50 a month from the 1st day of January, 1904, which was due at the end of each month, and which amounts, with interest, to $303.30, which it is decreed complainant shall pay to defendant Flower in full of all rent and charges under the lease to the last of July, 1904; requires defendant Flower to accept this money, and all that shall thereafter become due under the lease; and that upon such payment complainant shall be entitled to a peaceful occupancy of the premises. It is found that defendant Wray has no interest in the lease, and that complainant is entitled to recover from him in an appropriate action the amount of money, with interest, which was paid into the hands of the commissioner.

The complainant's contention, as stated in the brief, is as follows:

" 1. That by a long course of dealing defendant Flower had recognized the right of complainant in the premises, and that as a matter of fact the lease in question belonged to and was the property of complainant.

" 2. That the surrender of the lease by defendant Wray cannot affect the rights of complainant, who is the undertenant.

" 3. When there are under-tenants upon the premises, each must be served with summons, in order that they may have an opportunity to defend their possession; each must have his day in court.

" 4. Complainant has the right to protect its possession by paying to the over landlord the rent due him."

On the other hand, appellant contends:

" 1. That complainant was simply an under-tenant, and had no rights whatever in the premises, except such as it obtained from defendant Wray.

" 2. That there was no surrender of Wray's tenancy, but a bona fide termination of the lease for nonpayment

of rent, with no collusion nor agreement of any kind between defendants Flower and Wray.

"3. That the tenancy of the complainant was terminated and all its rights and interests in the premises extinguished on the expiration of. the seven days limited by the notice to pay, which was served January 2, 1904.

"4. That it was not the duty of the appellant to serve notice to quit upon all the subtenants and occupants of the. building, she having no contract relations whatever with them.

"5. That complainant could not take the place of defendant Wray in the proceedings before the commissioner, and prevent the writ of restitution being issued by paying the rent due and double costs.

"6. That, even if the complainant had such right to act in place of the defendant, the appellant was nevertheless entitled to the writ of restitution by reason of the failure to comply with the statutes."

The essential facts shown by the evidence we find to be as follows: The original lease from Flower to Wray was made September 25, 1897, for a term of five years from and after September 15, 1897, with the privilege to renew for five years at the same rental, provided that the assessed valuation of the realty had not increased. If it had, rent was to be proportionately greater. Taking advantage of this clause, he secured the renewal of the lease for the five-year term at the same rental. In doing this he acted neither secretly nor in fraud or attempted fraud of any of complainant's rights. On the contrary, there is testimony tending to show that, if he had surrendered the lease, or if defendant Flower had at the time made a lease to other parties, a higher rental would have been demanded. When defendant Wray sold his stock in complainant company, he desired to cease all relations with the company, and he then offered to assign the lease if permission could be obtained, or to surrender it—to do whatever complainant desired to have done in the matter. Complainant was also subletting the premises, receiving from tenants $35 a month rental. Defendant Flower declined absolutely to consent to an assignment of the lease, declined to accept

a surrender of the lease unless complainant would make a new lease from her, and it was thereupon determined that defendant Wray should sublet the premises to complainant, and a lease was accordingly drawn. This lease was dated August 15, 1903, for the period of 4 years and 28 days—the unexpired term created by the original lease. The rent reserved was $600 per annum. It was made payable monthly, and the lease otherwise contained the same covenants as the original lease. There was an understanding between defendant Wray and complainant that the company might send the rent directly to Mrs. Flower at the end of each month. At the end of August complainant did not pay the rent, and defendant Wray called its office by telephone, and stated that the rent was due. Either at this time or soon after, by direct communication, complainant claimed, and during the whole period thereafter it acted upon that claim and assumption, that its rent was payable, according to the terms of the sublease, on the 15th of each month. Defendant Wray paid the rent for August to his landlord. On September 18th Mr. Wray wrote a letter to complainant, in which he stated that its check for $50 for rent had been received on the 17th; that the rent was payable the last day of each month, and that the check should have been sent to him when he asked for it on September 1st; that rent for September would be due Mrs. Flower on the 30th, and, if unpaid, she could begin proceedings to terminate the tenancy.

"I do not propose to advance money from my own pocket to pay the rent for the Wray-Austin Machinery Co. I shall require and expect a $50 payment from you on or before Sept. 30th for the September rent of the premises."

Some time between September 1st and September 15th complainant sent its check to Mrs. Flower for the August rent, and it was returned with the statement that Mr. Wray had paid the rent. Thereafter it sent its check to Mr. Wray. It had replied to his letter above mentioned

that the September rent would not be due until the last of September or the first of October, "at which time it shall be paid." Complainant never paid its rent to defendant Wray until on or about the 15th of the succeeding month. Upon one occasion it deducted from the $50 a sum of money which it claimed it had been discovered he owed the company. Four times notices to quit were served on Wray. Three times he avoided further proceedings by paying the rent, either out of his own pocket or with money sent him by complainant. As is stated in the bill, on January 2d a notice to quit was served on him, and he, as he states in his answer, declined to be bothered any longer with a matter out of which he was making no profit. He received the check for the December rent on the 16th of January, the day after the judgment had been taken against him for restitution of the premises. On the same day complainant learned of the judgment, and paid the commissioner $53.50.

The testimony does not convince us that there was any connivance, conspiracy, or understanding between defendant Wray and defendant Flower to dispossess the complainant, nor that the proceedings were in any sense colorable, nor that defendant Wray has any desire to occupy the premises. There is nothing in the evidence which warrants any other conclusion than that, if complainant had seasonably paid its rent to defendant Wray, he would have continued to accommodate them by paying it over to the defendant Flower. The contention made in the bill and in the briefs that by the arrangement of August 15, 1903, a part of which arrangement was the execution and delivery of the sublease, the complainant assumed the position of Mr. Wray under the original lease, is negatived and disproved by the claim of complainant that under its lease rent was payable on the 15th day of each month, and by the practice of sending him rent in accordance with this claim. The relations and rights of all parties are determined by the written contracts entered into—the two leases. Defendant Flower has done noth-

ing to estop her from so asserting. Mr. Wray is lessee and complainant sublessee of the premises. It is the settled law of this State (*Stewart* v. *Sprague,* 71 Mich. 50) that the surrender of a lease must be the mutual and voluntary action of the parties to the lease. There was no such surrender. At the expiration of the time limited in the notice to quit, the tenancy, and with it the term, under the lease from defendant Flower to defendant Wray, was ended. *Smith* v. *Building Ass'n,* 115 Mich. 340, 346 (39 L. R. A. 410). There was no privity between complainant and defendant Flower. *Williams* v. *Railroad Co.,* 133 Mich. 448. An assignment of the lease by Mr. Wray would have worked a forfeiture of the term. *Randall* v. *Chubb,* 46 Mich. 311; *Marvin* v. *Hartz,* 130 Mich. 26. The rights and duties of defendant Flower and defendant Wray were alone involved in the summary proceedings, and to these proceedings the complainant was as much a stranger as it was to the covenants of the original lease. The decisions of courts of the State of New York relied upon by counsel for complainant seem to be based upon statutory provisions entirely unlike those of this State. .

The other contentions stated are incidental, merely, to the propositions upon which equitable jurisdiction was asserted. Whether the statute (3 Comp. Laws, § 11177) permits the subtenant to avoid the issuing of a writ of restitution by paying the amount found due and "double the amount of costs awarded to the said complainant" to the commissioner or to the landlord is a question of law. It seems to be conceded by counsel for complainant that the payment actually made into court by the sublessee was not sufficient in amount to satisfy the requirements of this statute, because double costs were not paid.

No case is made upon this record for equitable relief. The parties voluntarily assumed relations involving certain legal consequences. The averments relied upon for relief from those consequences, if, indeed, the bill contains

such averments, we do not find to be sustained by the evidence.

The decree of the court below is reversed, and the bill of complaint is dismissed, with the costs of both courts to defendants.

Moore, C. J., and Grant, Blair, and Montgomery, JJ., concurred.